No. 431

First Circuit

WILLIAMSON v. CHAPMAN ET AL.

(April 13, 1929. Opinion and Decree.)
(May 7, 1929. Application for Decree on Rehearing.)

Taylor, Porter, Loret & ·Brooks, of Baton Rouge, attorneys for plaintiff, appellant.

J. Y. Sanders, Jr., of Baton Rouge, attorney for defendant, appellee.

Breazeale & · Sachse, of Baton Rouge, attorney for Columbia Casualty of New York, defendant, appellee.

LECHE, J. Plaintiff entered into a contract with Dewey E. Chapman, whereby he bound himself to build a two-story residence on her lot of ground situated in the Parish of East Baton Rouge. The price agreed upon in the written contract is stated to be $8709. Chapman furnished bond in accordance with the agreement and in conformity to the statutes of this State in regard to building contracts, with the Columbia Casualty of New York as· surety.

This proceeding was filed as a concursus but in reality involves mainly differences that have arisen between plaintiff, owner, and defendant, contractor. Two oppositions were filed by furnishers of material, but these claims have been admitted as correct and as justly due, and the contest is narrowed down to the claims and counter claims, advanced respectively by the owner and by the contractor.

Among these claims and counter claims it is admitted that plaintiff owes in addition to the contract price $617.95 for extra work, changes and additional material.

Plaintiff in her petition, charges numerous short-comings on the part of the contractor, she alleges defective work, substitution of inferior material for that specified in the contract and she finally prays for liquidated damages in accordance with the penalty fixed in the contract, for delayed completion and delivery of the residence. She alleges the tender of the sum of $1187.32 deposited by her in the registry of the Court, as a balance due by her under the contract, for the benefit of all persons entitled to share therein, including her own claims.

Chapman and his surety, the Columbia Casualty Company, filed answers practically identical, denying the alleged imperfections and defects in the construction of the building, claiming ⅴ tional compensation for extra · ᴀaterial, and also claiming a ' ᴀe on the contract price, which , together are said to amount to $41·, ⅃ⅼ. Defendants further allege that the delay in furnishing and delivering the building was caused by the interference of plaintiff, in urging and insisting on numerous changes in the

specifications, and by weather conditions, all of these delays being excepted under the terms of the contract.

After a protracted trial, lasting several days, in which a mass of testimony was taken, the District Court rendered judgment recognizing the claims admitted by the two parties, fixing the fees of the attorneys for provoking the concursus at $300, recognizing the claim of the contractor as amounting to $2,287.74 and dismissing the contested claims of both plaintiff and defendant.

From this judgment both parties have appealed.

One provision in the contract in regard to its performance is that "the work shall commence on the 27th day of April, 1927, and shall be finished and completed by the 1st day of August, 1927," the work to be done under the personal supervision and to the satisfaction of the owner and the owner's architect, Lewis W. Grosz. W. F. Williamson, the husband of plaintiff, acting in her behalf and as her agent testifies that when Chapman undertook the performance of the contract, he was on the job every day to see what was going on during the construction of the building, and that he was assisted by architect Grosz who also acted on behalf of plaintiff as superintendent of construction.

Among the defects, flaws, blemishes and other imperfections charged by plaintiff to have resulted by the fault of defendant in the construction of the building, are defective plastering in the kitchen, bath rooms and toilet rooms, window lights not conforming to the specifications, second hand iron railing on front porch instead of new, unpainted surfaces in the boiler room, defective concrete topping of the cement walks and drives in the yard, missing door keys, unbraced screen door, one square of shingles marred by discoloration and metal laths of a size smaller than called for in the specifications. Plaintiff also claims several deductions for expenses incident to the construction of the building, which she claims to have paid and which should have been borne by defendant.

Lewis Grosz, an architect, and therefore an expert in the construction of buildings, selected and appointed by plaintiff to superintend the work performed by defendant under the contract, testified at length as to all the complaints of plaintiff in regard to the execution of the contract. He seemed to corroborate plaintiff in many of her objections to the acceptance of the work, but he finally sums up his opinion by saying that most of these objections are trivial and unimportant and that the real defects are four in number, viz:

1. The use of a second-hand iron railing.

2. Defective plastering.

3. Defective topping on concrete walks.

4. Window lights below specifications.

### 1.

The use of a second-hand iron railing is admitted by defendant, and for this variance from the specifications plaintiff should be allowed a deduction of $32.

### 2.

The plastering, from a preponderance of the testimony, appears to us to have been finished substantially in accordance with the specifications. While the plasterer was doing the work, changes and substitutions were made at the request of plaintiff and when the surfaces had been finished and smoothed down, it is said

that hollows and depressions could be seen, as shown by shadows, with a light held at an acute angle from the plane of the wall. We believe that it may reasonably be asserted that it is impossible for human ingenuity to finish the surface of a plane with such perfection that no unevenness could be detected under these conditions. Every automobile driver knows how the ridges and hollows on a public road, invisible in day-time, are exaggerated as they appear in front of strong head-lights at night. It is not shown that the walls are in the least disfigured in their appearance, nor is it shown, even if it be admitted that unusual depressions appear in the finished surfaces, what deductions, if any, plaintiff would be entitled to claim. Expert witnesses testified that the plastering complained of by plaintiff, was up to the highest possible standard. We therefore dismiss this complaint as not well founded.

### 3.

The defects in the topping on the concrete walks, as we read the testimony, were caused not by faulty construction but by abrasions which resulted from premature use of these walks by permitting steel rims of wheel barrows and wagons to pass over them. The specifications as we understand them, do not require a separate topping on the concrete walks and driveways, but it is not denied that the walks and driveways should denied that the walks and driveway should be finished smooth by the trowel. It is impossible to say what vehicles were run over the concrete, but it is undeniable that plaintiff did through her employees use the concrete walks for that purpose. We do not believe that the objection is sufficient to justify non-acceptance of the work.

### 4.

This complaint is to the effect that the lights to be used in the sashes should have been double strength, but were in reality only single strength. A great deal of testimony was taken upon this subject. It seems to be conceded by the witnesses that it is extremely difficult to defferentiate double strength from single strength glass. Three pieces of glass were examined by them. Some believed that thickness and weight should serve as guides, others thought that clear transparency and tensile strength were the basis of comparison. We frankly confess that after reading all the testimony on that subject, we are unable to determine the proper method of classifying window glass as to its strength. We do find, however, in the testimony that the glass used by the defendant was bought from a reputable merchant as double strength glass, and we are also of the opinion that it would be unfair to conclude that because three panes of glass might be single strength, all the glass used, some 350 to 500 panes in the construction of the house, were also all of single strength. We do not believe that plaintiff has established the ground of this complaint with any degree of certainty and it is therefore dismissed.

Plaintiff prays for liquidated damages in the sum of $1,050 for a delay of seventy days at $15 per day, in completing the construction of her residence. She claims that the work should have been completed by August 1, 1927, but was actually only completed on October 10, 1927, and that under the terms of the contract she is entitled to recover from defendant a penalty of $15 per day for this delay.

It is stipulated in the written contract that the construction is to begin on April

27, 1927, and it is to be completed by August 1, 1927. It is further stipulated that for every day of delay in the completion of the construction of the building, defendant should pay to plaintiff a penalty of $15, delays caused by the owner, and delays caused by the elements when notified to the owner within 48 hours, excepted.

It is abundantly shown by the evidence that the delays complained about by plaintiff were in great part due to rainy weather, which were promptly notified by letter to her agent and superintendent, Lewis Grosz, in full compliance with the terms of the contract. It is also shown that much of the delay was also caused by the acts of plaintiff herself, in requiring work to be done over again in order to make changes and alterations in the plan and specifications of the building. Plaintiff's husband who acted as her agent, on several occasions interfered with the workmen of defendant, acting no doubt in good faith, but with the result that the work was stopped and the delay materially increased. Our opinion from the testimony is that the delays complained of were excepted under the terms of the contract, and that defendant should not be penalized therefor.

The trial Judge did not believe that defendant Chapman had proved his claim for extra work and material and we see no reversible error in that finding.

Plaintiff has deposited in the registry of the Court the sum of $1187.32 as the balance due by her under the building contract. As we appreciate the evidence, she should have deposited the sum fixed in the contract, plus the extra sum admitted to be due by her, or say $9326.95, less sums paid by her amounting to $7128.36, or say $2198.59. From this amount

should then first be deducted the claims of the two materialmen, Kornmeyer and the Darling Lumber Company, totaling $246.52. If our figures are correct, this will then leave a balance of $1952.07 to satisfy the claims, deductions and counterclaims of the owner and of the builder. The only claim to which, in our opinion, plaintiff is entitled to credit is that which amounts to $50, deduction of $32 for railing on front porch, and $18 for the difference in the cost of iron laths of three pounds instead of three and a half pounds as provided for in the contract. After making this further deduction the fund that remains for distribution to pay attorney's fees and costs, and the claim of the contractor, should amount to $1902.07.

According to Section 10 of Act 298, page 545, of 1926, the person who provokes a concursus is entitled to his attorney's fee to be paid out of the fund deposited, and the costs of the proceedings are also to be paid out of the same fund by preference. The underlying reason for this provision in the statute evidently is that the services rendered by the attorney who files the proceedings for a concursus and the services of the officers of the court in these proceedings enure to the benefit of all persons who are interested in the fund, inasmuch as they are rendered to preserve the fund for the benefit of all claimants in proportion to their respective interest therein. It appears to us from the proceedings filed herein and the large amount of testimony introduced on the trial of this concursus, that the services rendered by the attorneys of the owner of the building, were estimated and fixed by the District Court not merely for filing the concursus proceedings and for preserving the fund, but for the purpose of enabling plaintiff to recover her alleged claims and thereby reduce the fund to

which alone defendant can look for the payment of his work. The ultimate result then is to compel defendant to pay for these services by deducting them from the fund to which he is entitled. We do not believe that the lawmaker had any such purpose in view. It is impossible under the condition of the record for us to fix the amount to which plaintiff is entitled, in order to pay her attorneys for merely provoking the concursus, or to fix the proportionate part of the costs which plaintiff should pay in her unsuccessful attempt to collect the claims which she makes against the defendant, and the case will be remanded to the District Court in order to fix these amounts.

It is therefore ordered that the judgment appealed from be avoided and set aside, that plaintiff be condemned to deposit the further sum of $1011.27 in the registry of the Court, so that said deposit may amount to $2198.59; that there be paid out of said deposit the claims of the Darling Lumber Company and of Kornmeyer; that there be further paid out of said fund deposited, the attorneys' fees and costs of Court for provoking the concursus, as may be fixed and taxed by the District Court, that plaintiff be paid out of said deposit the sum of $50, and that the balance of said deposit be paid to Dewey E. Chapman, contractor and builder, in full satisfaction of his claim under his contract.

It is further ordered that in case plaintiff fails to make the further deposit of $1011.27 within thirty days of the finalty of this judgment, that she be condemned to pay said amount to Dewey E. Chapman, and that judgment be entered in favor of said Dewey E. Chapman and against Mrs. Georgie P. Williamson in the sum of $1011.27.

It is further ordered that the costs of appeal be paid in equal portions by plaintiff and defendant.

———

## ON APPLICATION OF BOTH PARTIES FOR AMENDMENT OF FORMER DECREE

Per Curiam:

Several clerical errors were made in our decree fixing the rights of the parties in this case.

On their joint application made within the delays for a rehearing, and by consent of both parties, our former decree is amended in the following particulars, and as thus amended is made final.

It is ordered that in addition to the deductions and allowances in the decree of April 13, 1929, the said Mrs. Georgie P. Williamson is entitled to and allowed to deduct from the sum of $9,326.95 the following items: $175 for finished hardware, $200 for electrical fixtures, $80 for calsomining, and $21.46 for fire insurance; that she be allowed as attorney's fees for provoking the concursus, $200 and that all costs of both courts be paid in equal portions by Mrs. Williamson and by Chapman.

It is further ordered that said decree of April 13, 1927, as thus amended, be made final.